**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

**TONY RAPATZ, ALICE GUERRA, and**
**KATHERINE GUERRA,**

**Plaintiffs,**

v.                              **Cause No.:**     **CIV 12-00827 RHS/LFG**

**CITY OF ESPANOLA;**
**JOE MARTINEZ, individually;**
**CHRISTIAN LOPEZ, individually;**
**ROBERT VIGIL, individually;**
**DANNY PACHECO, individually; and**
**CITY OF ESPANOLA EMPLOYEES and**
**SUPERVISORS JOHN/JANE DOES 1 through 5, individually,**

**Defendants.**

**CHRISTIAN LOPEZ' AND JOE MARTINEZ'**
**MOTION TO DISMISS THIRD AMENDED COMPLAINT**
**AND CONSOLIDATED MEMORANDUM**
**AND**
**MOTION FOR QUALIFIED IMMUNITY**

       **COMES NOW,** Defendants, Christian Lopez ("Lopez") and Joe Martinez ("Martinez"),

by and through their attorney, Law Office of Robert Cole (Robert Cole) and hereby move the

Court for its Order dismissing all claims against Lopez and Martinez, contained in the Third

Amended Complaint ("TAC") [Doc. 78], pursuant to Federal Rules of Civil Procedure 12(c) and

12(b)(6), for failure to state a claim, and to assert their defenses of Qualified Immunity.

**INTRODUCTION**

       Plaintiffs' Third Amended Complaint ("TAC") asserts claims against multiple defendants,

including Defendants Lopez and Martinez for "money damages to redress the deprivation by the

defendants of rights secured to the plaintiffs by the Constitution and laws of the United States

and the State of New Mexico. The defendants subjected the plaintiffs to false arrest, unlawful

search and seizure, judicial deception, unreasonable or excessive force, conspiracy, assault and battery and the intentional infliction of emotional distress, in contravention of the Constitution and laws of the United States and the Constitution and laws of the State of New Mexico". [Doc. 78 ¶ 1]

Plaintiffs' claims arise out of an incident that occurred on May 12, 2010, when "[d]efendants, along with members of the New Mexico State Police, raided the home of plaintiffs" [Doc. 78, ¶29], while executing a "no knock search warrant". [Doc. 78, ¶ 31]

## RELEVANT LAW

### *RULE 12 MOTIONS*

A Rule 12(c) motion for judgment on the pleadings is governed by the same standards as a Rule 12(b)(6) motion to dismiss. *Mock v. T.G.&Y*, 971 F.2d 522, 528 (10th Cir. 1992).

In order to survive a motion to dismiss, pursuant to Rule 12(b)(6), a complaint must contain sufficient factual allegations to state a claim for relief that is" plausible on its face". *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009)(quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

In *Bell Atl. Corp. v. Twombly*, the Supreme Court held that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 555. Specifically, if a plaintiff "ha[s] not nudged [his] claims across the line from conceivable to plausible, [the] complaint should be dismissed." *Id.* at 570.

"Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has merely alleged but has not shown that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.' ' " *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

In *Ridge at Red Hawk, LLC v. Schneider* the Tenth Circuit articulated the standard that "the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Ridge at Red Hawk, LLC v. Schneider,* 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in the original).

**LIABILITY UNDER 42 U.S.C. § 1983**

Section 1983 of Title 42 of the United States Code provides: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress… *42 U.S.C. § 1983*.

To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law.  *West v. Atkins, 4*87 U.S. 42, 48 (1988).

Individual, non-supervisory defendants may be liable if they knew or reasonably should have known that their conduct would lead to the deprivation of a plaintiff's constitutional rights

by others, and an unforeseeable intervening act has not terminated their liability. *Martinez v. Carson,* 697 F.3d 1252, 1255 (10th Cir. 2012)

The requisite causal connection is satisfied if [the defendants] set in motion a series of events that [the defendants] knew or reasonably should have known would cause others to deprive [the plaintiffs] of [their] constitutional rights. *Trask v. Franco*, 446 F.3d 1036, 1046 (10th Cir. 2006).

The Supreme Court has made clear that there is no respondeat superior liability under 42 U.S.C. § 1983. *Ashcroft v. Iqbal*, 556 U.S. at 675. Supervisors can be held liable only for their own unconstitutional or illegal policies, and not for the employees' tortious acts. *Barney v. Pulsipher,* 143 F.3d 1299, 1307-08 (10th Cir. 1998).

### Individual Liability.

Under § 1983, "Defendants are liable for the harm proximately caused by their conduct." *Martinez v. Carson*, 697 F.3d at 1255.

Thus, government actors may be liable for the constitutional violations that another committed, if the actors "set in motion a series of events that the defendant knew or reasonably should have known would cause others to deprive the plaintiff of her constitutional rights," thus establishing the "requisite causal connection" between the government actor's conduct and a plaintiff's constitutional deprivations. *Trask v. Franco*, 446 F.3d 1036, 1046 (10th Cir. 2006).

### Supervisory Liability

The Tenth Circuit, in *Gallaher v. Shelton*, held that supervisors are not liable under 42 U.S.C. § 1983 unless there is "an affirmative link between the constitutional deprivation and either the supervisor's personal participation, exercise of control or direction, or failure to

supervise. *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009)(quoting *Green v. Branson*, 108 F.3d 1296, 1302 (10th Cir. 1997))(internal alterations omitted).

Because supervisors can be held liable only for their own constitutional or illegal policies, and not for the torts that their employees commit, supervisory liability requires a showing that such policies were a deliberate or conscious choice. *Barney v. Pulsipher*, 143 F.3d 1299, 1307-08 (10th Cir. 1998)

"[I]t is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality. The plaintiff must also demonstrate that, through its <u>deliberate</u> conduct, the municipality was the 'moving force' behind the injury alleged." (emphasis in original) *Cf. Bd. of Cnty. Comm'rs v. Brown*, 502 U.S. at 404

The Tenth Circuit in *Dodds v. Richardson* held: "Whatever else can be said about *Iqbal,* and certainly much can be said, we conclude the following basis of § 1983 liability survived it and ultimately resolves this case: § 1983 allows a plaintiff to impose liability upon a defendant-supervisor who creates, promulgates, implements, or in some other way possesses responsibility for the continued operation of a policy the enforcement (by the defendant-supervisor or her subordinates) of which "subjects, or causes to be subjected" that plaintiff "to the deprivation of any rights . . . secured by the Constitution". *Dodds v. Richardson* 614 F.3d at 1199.

The Tenth Circuit noted that *Ashcroft v. Iqbal* "does not purport to overrule existing Supreme Court precedent," but stated that "<u>Iqbal</u> may very well have abrogated § 1983 supervisory liability as we previously understood it in this circuit in ways we do not need to address to resolve this case." *Dodds v. Richardson*, 614 F.3d at 1200. It concluded that *Ashcroft v. Iqbal* did not alter "the Supreme Court's previously enunciated § 1983 causation and personal involvement analysis." *Dodds v. Richardson*, 614 F.3d at 1200.

The Tenth Circuit, based on this conclusion, set forth a test for supervisory liability under § 1983 after *Aschroft v. Iqbal*: A plaintiff may succeed in a § 1983 suit against a defendant-supervisor by demonstrating the following: 1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy; that (2) caused the complaint of constitutional harm; and (3) acted with the state of mind required to establish the alleged constitutional deprivation. *Dodds v. Richardson*, 614 F.3d at 1199-1200 (citing *Summum v. City of Ogden*, 297 F.3d 995, 1000 (10th Cir. 2002)).

The Tenth Circuit reasoned that two of the prongs often, if not always, are sufficient proof that the third prong has been met also: Where a plaintiff claims that a particular municipal action itself violates federal law, or directs an employee to do so, resolving these issues of fault and causation is straightforward. Section 1983 itself contains no state-of-mind requirement independent of that necessary to state a violation of the underlying federal right. In any § 1983 suit, however, the plaintiff must establish the state of mind required to prove the underlying violation. Accordingly, proof that a municipality's legislative body or authorized decisionmaker has intentionally deprived a plaintiff of a federally protected right necessarily establishes that the municipality acted culpably. Similarly, the conclusion that the action taken or directed by the municipality or its authorized decisionmaker itself violates federal law will also determine that the municipal action was the moving force behind the injury of which the plaintiff complains. *Dodds v. Richardson*, 614 F.3d at 1200 n.8 (quoting *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. at 404-05)(internal quotations omitted).

The Tenth Circuit noted that "[w]e think the same logic applies when the plaintiff sues a defendant-supervisor who promulgated, created, implemented or possessed responsibility for the

continued operation of a policy that itself violates federal law." *Dodds v. Richardson*, 614 F.3d at 1200 n.8.

Thus, the Tenth Circuit reduced the test to what can be seen as a two-part test for supervisor liability, requiring the plaintiff to prove "an 'affirmative' link . . . between the unconstitutional acts by their subordinates and their 'adoption of any plan or policy . . . -- express or otherwise -- showing their authorization or approval of such misconduct.*" Dodds v. Richardson,* 614 F.3d at 1200-01 (quoting Rizzo v. Goode, 423 U.S. 362, 371 (1976)).


## *QUALIFIED IMMUNITY*

Under § 1983 ... a plaintiff may seek money damages from government officials who have violated her constitutional or statutory rights. But to ensure that fear of liability will not "unduly inhibit officials in the discharge of their duties," *Anderson v. Creighton*, 483 U.S. 635, 638 (1987.

The officials may claim qualified immunity; so long as they have not violated a "clearly established" right, they are shielded from personal liability, *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). That means a court can often avoid ruling on the plaintiff's claim that a particular right exists. If prior case law has not clearly settled the right, and so given officials fair notice of it, the court can simply dismiss the claim for money damages. The court need never decide whether the plaintiff's claim, even though novel or otherwise unsettled, in fact has merit. *Camreta v. Green*, 131 S. Ct. 2020, 2030-31 (2011).

Issues of qualified immunity are best resolved at the "earliest possible stage in litigation." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)(quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991

Qualified immunity shields government officials from liability where "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Pearson v. Callahan*, 555 U.S. at 231 (quoting *Harlow v. Fitzgerald*, 457 U.S. at 818).

Qualified immunity also shields officers who have "reasonable, but mistaken beliefs," and operates to protect officers from the sometimes "hazy border[s]" of the law. *Saucier v. Katz,* 533 U.S. 194, 205 (2001). When a defendant asserts qualified immunity, the plaintiff must demonstrate: (i) that the defendant's actions violated his or her constitutional or statutory rights; and (ii) that the right was clearly established at the time of the alleged misconduct. *Riggins v. Goodman*, 572 F.3d 1101, 1107 (10th Cir. 2009)

In evaluating whether the right was clearly established, a district court considers whether the right was sufficiently clear that a reasonable government employee in the defendant's shoes would understand that what he or she did violated that right. *Casey v. W. Las Vegas Indep. Sch. Dist.*, 473 F.3d 1323, 1327 (10th Cir. 2007).

 "Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Currier v. Doran*, 242 F.3d 905, 923 (10th Cir. 2001).

On the other hand, the Supreme Court has observed that it is generally not necessary to find a controlling decision declaring the "very action in question . . . unlawful. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

In determining whether the right was 'clearly established,' the court assesses the objective legal reasonableness of the action at the time of the alleged violation and asks whether 'the

contours of the right [were] sufficiently clear that a reasonable official would understand that what he is doing violates that right. *Holland ex rel. Overdorff v. Harrington*, 268 F.3d 1179, 1186 (10th Cir. 2001)(citing *Saucier v. Katz*, 533 U.S. at 202). A court should inquire "whether the law put officials on fair notice that the described conduct was unconstitutional" rather than engage in "a scavenger hunt for cases with precisely the same facts." *Pierce v. Gilchrist*, 359 F.3d 1279, 1298 (10th Cir. 2004).

   The Supreme Court has clarified that the clearly established prong of the qualified immunity test is a very high burden for the plaintiff: "A Government official's conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right. *Ashcroft v. al-Kidd*, 131 at 2083. "In other words, 'existing precedent must have placed the statutory or constitutional question beyond debate. *Reichle v. Howards*, 132 S. Ct. at 2093 (quoting *Ashcroft v. al-Kidd*, 131 S. Ct. at 2083).

   While a case directly on point is not required, the Supreme Court has held that "existing precedent must have placed the statutory or constitutional question beyond debate. *Ashcroft v. al-Kidd,* 131 at 2083. "The operation of this standard, however, depends substantially upon the level of generality at which the relevant 'legal rule' is to be identified." Anderson v. Creighton, 483 U.S. at 639. "The general proposition, for example, that an unreasonable search or seizure violates the Fourth Amendment is of little help in determining whether the volatile nature of particular conduct is clearly established." *Ashcroft v. al-Kidd*, 131 at 2084.

   The level of generality at which the legal rule is defined is important, because qualified immunity shields officers who have "reasonable, but mistaken beliefs" as to the application of

law to facts and operates to protect officers from the sometimes "hazy border[s]" of the law.

*Saucier v. Katz*, 533 U.S. at 205.

**PLAINTIFFS FAILED TO STATE A 42 U.S.C. §1983 CLAIM FOR SUPERVISORY LIABILITY AGAINST CHIEF MARTINEZ AND LT. LOPEZ.**

### *Respondeat Superior*

Plaintiffs' claims of liability against Lt. Lopez and Chief Martinez for Plaintiffs' alleged injury and damages appear to be based on the allegation that Lt. Lopez and Chief Martinez, while acting in their official capacity [Doc. 78, ¶ 14,15], and under color of law.[Doc. 78, ¶ 10], were responsible for the hiring, training, supervision, discipline, and retention of Defendants, Officers Vigil and Pacheco [Doc. 78, ¶ 6] and are liable for the actions of their subordinate employees pursuant to the doctrine of respondeat superior. [Doc. 78, ¶ 11].

The Supreme Court is clear on this issue.  <u>There is no respondeat superior liability under 42 U.S.C. § 1983.</u>  *Ashcroft v. Iqbal, 556 U.S. at 675. (*emphasis added*)*

### *Failure to Properly Train and Supervise*

Plaintiffs allege that:  Lt. Lopez was responsible for the training of Officer Vigil; while acting in that capacity, Lt. Lopez failed to conduct Performance Evaluations;  the failure to conduct those evaluations was the "moving force and/or (sic) cause" of the alleged violations of Plaintiffs' constitutional rights.[Doc. 78, ¶ 7]

Applying the two two-part test for supervisor liability, as articulated in *Dodds v. Richardson*, Plaintiffs must prove that: 1) there is an "an 'affirmative' link . . . between the unconstitutional acts by their subordinates (in this case the use of excessive force by "defendants and members of the New Mexico State Police), *Dodds v. Richardson*, at 1200, ; and 2). Lt. Lopez' "adoption of any plan or policy -- express or otherwise",  indicating Lt. Lopez' authorization or approval of such misconduct. *Dodds v. Richardson*, at 1201.

In this case, the allegations contained in Plaintiffs' Third Amended Complaint failed to do more than merely allege that the plan or policy adopted by Lt. Lopez of failing to conduct Performance Evaluations was the moving force and proximate cause of Plaintiffs deprivation of their constitutional rights.

### *Policymaker Liability*

Plaintiffs alleged the City of Espanola had policymakers, including the Chief of Police. [Doc. 78, ¶ 5]; that Chief Martinez was a policymaker for the Espanola Police Department [Doc. 78, ¶ 6,], and that Chief Martinez' practices and policymaking actions was(sic) the moving for (sic) which caused a violation of plaintiffs' constitutional rights. [Doc. 78, ¶ 6,7]

Plaintiffs allege that the "policymaking action" attributable to all Chiefs of Police, including "Chief Martinez who followed a custom and practice of intentionally and deliberately not conducting Internal Affairs investigations into citizen complaints against officers". [Doc. 78, ¶ 21].

As an indication of that alleged ongoing "custom and practice of failing to conduct Internal Affairs investigations", Plaintiffs allege that Chief Martinez, "despite having directly received [one] citizen's complaint of police misconduct, [he] deliberately refused to follow the EPD Directives requiring an Internal Affairs Investigation". [Doc. 78, ¶ 21]; and that the "policymaker's omission… was another moving force and cause of Plaintiffs' constitutional violations.[Doc. 78, ¶ 21], Plaintiffs are referring to the allegations in their Third Amended Complaint in which they contend that "Defendants received notice of Plaintiffs' alleged police misconduct on or before Plaintiffs' filed a Torts Claim Notice", and "no internal-affairs-type investigation was undertaken to determine whether any of the officers involved had acted improperly".[Doc. 78, ¶ 43].

The logical inconsistency of Plaintiffs' claims against Chief Martinez, as a policymaker, is apparent. Plaintiffs contend that, but for, failure to conduct an after-the-fact Internal Affairs investigation into the events giving rise to their claim, those same alleged unlawful acts would have been prevented.

Apply the standard articulated in *Ashcroft v. Iqbal*, Plaintiffs have failed to do more than allege facts that are 'merely consistent with' a defendant's liability.

## PLAINTIFFS FAILED TO STATE A 42 U.S.C. §1983 CLAIM FOR INDIVIDUAL LIABILITY AGAINST CHIEF MARTINEZ AND LT. LOPEZ.

Plaintiffs allege that either or both Chief Martinez or Lt. Lopez were on-scene in a supervisory capacity" during the events giving rise to their cause of action and, "despite an opportunity and obligation to do so", failed to prevent the alleged "unlawful action to which Plaintiffs were subjected" [Doc. 78, ¶ 36]

At best, Plaintiffs allegations merely implied that the conduct of these defendant entitles them to relief. "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has merely alleged but has not shown that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009).

## CHIEF MARTINEZ AND LT. LOPEZ ARE ENTITLED TO THE DEFENSE OF QUALIFIED IMMUNITY

Qualified immunity shields government officials from liability where "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Pearson v. Callahan*, 555 U.S. at 231 (quoting *Harlow v. Fitzgerald*, 457 U.S. at 818). Chief Martinez' and Lt. Lopez' conduct, as alleged in Plaintiffs' Third Amended Complaint did not violate a clearly established constitutional right. Based on Plainitffs' allegations, as set forth above, Chief Martinez and Lt. Lopez they are entitled to Qualified Immunity.

## CONCLUSION

Plaintiffs' Third Amended Complaint failed to allege facts sufficient to state a claim against Defendants, Joe Martinez and Christian Lopez, and therefore should be dismissed pursuant to Rule 12 of the Federal Rules of Civil Procedure and the law regarding Qualified Immunity.

WHEREFORE, Defendants Christian Lopez and Joe Martinez pray the Court for its Order dismissing Plaintiffs' Third Amended Complaint and for the Courts Order granting Qualified Immunity and for such other relief as the Court deems proper.

Respectfully Submitted,

LAW OFFICE OF ROBERT COLE

*/s/ electronically by Robert Cole*____
ROBERT COLE
*Attorney for Defendants*
*Christian Lopez and Joe Martinez*
6303 Indian School Road NE, Ste 100
Albuquerque, New Mexico  87102
(505) 872-8626 / 872-8624 (FAX)
Email: rlc@rcolelaw

I HEREBY CERTIFY that on this **14**th day of *February, 2014*, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected  on the Notice of Electronic Filing:

Nathanial V. Thompkins, Esq.
NEW MEXICO FIRM, LLC
*Attorney for Plaintiffs*
103 St. Francis Drive, Unit A
Santa Fe, New Mexico  87501
(505) 988-9750

*/s/ electronically by Robert Cole*____
ROBERT COLE