# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

TONY RAPATZ, ALICE GUERRA, and
KATHERINE GUERRA,

        Plaintiffs,

vs.

                         Case No.: 12-CV-00827 RHS/LFG

CITY OF ESPANOLA;
JOE MARTINEZ, individually;
CHRISTIAN LOPEZ, individually;
ROBERT VIGIL, individually;
DANNY PACHECO, individually; and
CITY OF ESPANOLA EMPLOYEES and SUPERVISORS JOHN/JANE DOES 1 through 5,
individually,

                Defendants.

## PLAINTIFFS', TONY RAPATZ, ALICE GUERRA AND KATHERINE GUERRA, MOTION FOR PARTIAL SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT

      COME NOW the Plaintiffs, Tony Rapatz, Alice Guerra, and Katherine Guerra [hereinafter "Plaintiffs"] by and through their counsel, New Mexico Firm, LLC [Nathaniel V. Thompkins] and for their Motion for Partial Summary Judgment against the Defendants, Robert Vigil, Christian Lopez and Joe Martinez state as follows:

## <u>INTRODUCTION</u>

      Plaintiffs have lived in their residence in peace in the town of Espanola, New Mexico for years prior to the arrival of Esequiel D. Pacheco and his wife, Juanita Pacheco (hereinafter referred to as the "Pachecos"). The Pachecos moved into the neighborhood and immediately began having conflicts with the Plaintiffs. As Plaintiffs would quickly find-out, the Pachecos have a son, the Defendant Danny Pacheco (hereinafter "D. Pacheco"), who is a police officer in

the Espanola Police Department with the other Defendants, including Robert Vigil (hereinafter "Vigil").

Esequiel D. Pacheco filed for a civil permanent injunction and restraining order against the Plaintiff Tony Rapatz in the First Judicial District Court and included his son, Police Officer Danny Pacheco, as a part of the application and identified as "my guests". [See, Exhibit A, pg.2, attached hereto]. A hearing was held on July 30, 2010, before the Honorable Barbara Vigil. A permanent injunction was issued against the Plaintiff Tony Rapatz and it specifically named the Defendant Officer Danny Pacheco as benefiting from the Order. [See, Exhibit B, attached hereto].

On May 10, 2010, one day before the issuance of an invalid search warrant for the Plaintiff Tony Rapatz, Defendant Officer Danny Pacheco and Defendant Officer Robert Vigil, got together at Officer Pacheco's parents' home and concocted a story about "odors", "cat urine" and the "manufacturing of methamphetamines" at the residence of Plaintiff Tony Rapatz. The search warrant is based upon numerous levels of hearsay and a non-verified and unproven confidential informant, who did not personally observe any criminal activity, did not purchase any drugs and who reported hearsay statements to the Defendant Vigil upon which Vigil based his probable cause for the issuance of a Search Warrant. Critically the Defendants had no actual evidence, other than hearsay, to support the probable cause needed to issue the search warrant in this case.

Defendants Joe Martinez (hereinafter "Martinez") and Christian Lopez (hereinafter "Lopez") were respectively, the Chief of Police and Lieutenant, both of whom supervised Defendants Vigil and D. Pacheco. Under the Espanola Police Department Directives (hereinafter

"EPDD") prior to the execution of a "High Risk Warrant"[1] a "Case Plan"[2] must be prepared and approved by both Martinez and Lopez. The Case Plan must include: (1) an explanation of the nature of the operation and its goals; (2) names and addresses etc. of identified targets; (3) names of all personnel involved in the operations and their assignment; and (4) numbers of all informants used in the operations. The High Risk Warrant and Case Plan requirements required that Martinez and Lopez both read the Search Warrant in order to approve the Case Plan. In addition, Vigil admitted that Lopez and he discussed the Search Warrant and Lopez reviewed it before they (Martinez, Lopez and Vigil) served it upon Plaintiffs in a para-military fashion. [See, Exhibit F, Vigil Depo., pgs.189-192, lns.19-12]. During the execution of the Search Warrant, both Martinez and Lopez were the "on-scene" supervisors.

On May 11, 2010, at 6:00 a.m. Plaintiffs were awakened by approximately 40 armed rifle pointing Espanola and New Mexico State Police Officers serving a facially invalid Search Warrant in violation of Plaintiffs' Fourth Amendment Constitutional rights. [Exhibit C, Rio Grande Sun Article 5/20/2010]. The Search Warrant, attached hereto as Exhibit D, is, in every respect over-broad and a general warrant that contains no limitation on the scope of the search and what can be seized in connection with any specified criminal activity. The Search Warrant, which incorporates the Affidavit, fails to establish the "veracity" of the alleged confidential informant. Plaintiffs, during this invalid and illegal search, were subjected to excessive force, over two hour arrest during which time they were paraded upon and down the neighborhood clothed only in their under garments. In the end, Defendants found nothing in the home of the

---

[1] "High Risk Warrants" are covered under EPDD 55.1.16 and are defined as "[w]hen there are facts to suggest that a place to be searched, or persons at the location present a special danger to the officer/detectives, the following steps shall be taken: 1. A Case Plan shall be prepared by the Incident Commander."

[2] Pursuant to Fed.R.Civ.P., Rule 26(a)(1)(ii), "Initial Disclosures", a party must, without awaiting a discovery request, provide to the other parties: (ii) a copy – or description by category and location – all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody or control and may be used to support its claims or defenses …". Defendants have either failed to disclose or refuse to provide a copy of the Case Plan that should have been developed in this case and pursuant to EPDD.

Plaintiffs that even remotely suggested a crime had been committed or that there was criminal activity being conducted at the residence.

Although the Search Warrant only targets the Plaintiff Tony Rapatz, Defendants illegally assault and battered as well as falsely arrested Plaintiffs Alice Guerra or Katherine Guerra. None of the Plaintiffs committed any crime, were not fleeing and posed no risk of danger to the officers' on-scene. There was no probable cause to arrest either of the Plaintiffs Alice Guerra or Katherine Guerra on May 11, 2010.

## LEGAL STANDARD REGARDING SUMMARY JUDGMENT

Summary judgment is appropriate if "the record contains no evidence of a genuine issue of material fact and demonstrates that the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 447 U.S. 242, 247 (1986). Although the Court must view the evidence and draws all inferences in the light most favorable to the party opposing summary judgment, that party still "must identify sufficient evidence which would require submission of the case to a jury." *Mares v. ConAgra Poultry Co.*, 971 F.2d 492, 494 (10th Cir. 1992).

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." An arrest, of course, qualifies as a "seizure" of a "person" under this provision, *Dunaway v. New York*, 442 U.S. 200, 207–208, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979), and so must be reasonable under the circumstances. See, *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2080, 179 L. Ed. 2d 1149 (2011).

## STATEMENT OF UNDISPUTED MATERIAL FACTS

1.      On May 11, 2010, Vigil submitted an Affidavit and Search Warrant to Judge Sherri Raphelson of the First Judicial District Court. [See, Exhibits E (Search Warrant) and Exhibit D (Affidavit)].

2.     In the Affidavit, Vigil alleged that a confidential informant "observed firearms in the home to include an assault riffle [sic].  It [sic] (means IT for informant) was unsure what type of riffle [sic] he saw. <u>For the safety  of every one [sic] involved in this search Warrant the Affiant would like to request a **NO KNOCK WARRANT**</u> [sic]. [See, Exhibit D, pg.6, ¶ 2].

3.     EPDD 55.1.16 (C) expressly prohibits an Espanola Police Officer, such as Vigil, from obtaining from a Magistrate or Judge a pre-approved "No-Knock" Search Warrant. [See, *Id.*, pg.1, 55.1.16 (C)].  The specific subsection provides: "Magistrate and Judges may **NOT** pre-approve a no-knock entry." *Id.* (Emphasis theirs).

4.     EPDD 55.1.16 (C) expressly provides that a "No-Knock" entry decision must be based upon "… <u>facts known  to the officers relating to the danger posed by knocking and announcing their presence and intent."</u> [*Id.*] (Emphasis ours).  Further, <u>[t]he fact that narcotics are involved and/or that the person(s) owns firearms is not sufficient. There must be a reasonable likelihood, based on articulable facts, that the weapons will be used against the officers."</u> [*Id.*] (Emphasis ours).

5.     Neither VIGIL's Affidavit or the Search Warrant provide any articulable facts that weapons will be used against the officers.  [See, Exhibits D and E].

6.     Defendants and the New Mexico State Police, made a "No-Knock" raid into Plaintiffs' home at approximately 6:00 a.m. on May 11, 2010. [See, Exhibit C].

7.     There was no stated justification for a "No-Knock" raid into Plaintiffs' home on May 11, 2010. [See, Exhibits D and E].

8.     The Search Warrant does not describe, with particularly, the place to be searched, and the persons or things to be seized.  The Search Warrant itself incorporates by reference the Affidavit. [See, Exhibit E].

9.     The Affidavit at ¶ # 1 describes the entire premises of the property owned by Plaintiff Tony Rapatz and includes "curtilage, <u>all dwelling(s), structure(s), whether attached and/or unattached, trash container(s) well house(s) and/or located at 732 Megill, in Espanola, New Mexico, residence of Alice Guerra.</u>" This description and the remainder of thereof describes the entire property and structures on the property of Alice Guerra. [See, Exhibit D, pg.1, ¶ 1].

10.    The Affidavit at ¶ # 2 lists "<u>[a]ny and all vehicle(s) located at above-described premises, to be searched.</u>" [See, Exhibit D, pg.1, ¶ # 2]. This description describes all vehicles without particularity and without a connection to any criminal activities. [See, Exhibit D, pg.1, ¶ 2].

11.    The Affidavit at ¶ # 3 describes "[a]ny and all person(s) located a the above-described premises, to be searched including but not limited to the suspect Tony Rapatz …". The description fails to describe with particularity the persons or things to be seized.

12.    The Affidavit states that "… <u>there is now being concealed</u>":

    a.  Firearm(s), components, accessories, cleaning materials, cases, owners manuals and/or <u>any other items used to facilitate the possession, use, maintenance and/or transfer of the said item(s).  Document(s) that establish ownership, possession, use and/or transfer of the herein-described item(s), to be seized.</u> [See, Exhibit D, pg.1, second ¶ # 1].

    b.  Ammunition, <u>whether fired or unfired, projectile(s), fragment(s) of projectile(s), ammunition casing(s) whether fired or unfired … . Document(s) that establish ownership, possession , transfer and/or the right of ownership, possession, use and/or transfer of the, herein-described item(s) to be seized.</u> [See, Exhibit D, pgs.1-2, second ¶ # 2].

    c.  <u>Any and all paging devices, cellular telephones – digital or otherwise – and bills or receipts relating to … Data stored on/within the internal and/or external memory … This warrant shall authorize the complete search of the herein-described items, to be searched.</u> [See, Exhibit D, pg.2, ¶ # 3].

d. Prescription narcotic(s) and/or prescription narcotic(s) container(s) containing any amount of narcotics whether open or closed. Any packages used to advertise, store and/or transport prescription narcotic(s). Any document(s) recorded on any media which indicates and/or tends to indicate the advertisement, sale, purchase, use, consumption, transfer and/or storage of prescription narcotic(s). [See, Exhibit D, pg.2, ¶ # 4].

e. Illegal narcotics and/or any other controlled substances … including, but not limited to any drug or substance listed in Schedule I through V of the Controlled Substance Act or regulations adopted thereto. [See, Exhibit D, pg.2, ¶ # 5].

f. Illegal narcotics paraphernalia … in violation of the Controlled Substance Act. [See, Exhibit D, pg.2, ¶ # 6].

g. Large amounts of currency, financial instruments, precious metals, jewelry and other items of value and/or proceeds of drug transactions. [See, Exhibit D, pg.2, ¶ # 7].

h. Any and all drug customer lists, drug records … intended to pay for controlled substances. [See, Exhibit D, pg.2, ¶ # 8].

i. Documentation of the herein-described premises … [See, Exhibit D, pg.2, ¶ # 9].

j. Telephone and address books or notes containing telephone numbers and addresses of co-conspirators. [See, Exhibit D, pg.2, ¶ # 10].

k. Item(s) which establish or tend to establish possession, use, residence, occupancy, presence and/or the right to possession, use, residence, occupancy and/or presence at the above described premises and/or vehiclc(s), to be searched. [See, Exhibit D, pg.2, ¶ # 11].

l. Any record documented on any media, which establishes and/or tends to establish the state of mind, motive(s), action(s), means and/or intention(s) of any person(s) with knowledge or apparent knowledge of the crime(s), including, but not limited to diaries, journal(s) audio and/or video tape(s). [See, Exhibit D, pg.3, ¶ # 12].

13.    Vigil stated in his Affidavit that he was "… contacted by two concerned law enforcement entities …". Vigil alleges that the entities informed him that Rapatz sells drugs from his residence and is "possibly" cooking Methamphetamines. [See, Exhibit D, pg.5, ¶ 6]. However, the two law enforcement entities are not identified.

14. According to Vigil one, unidentified, neighbor reported smelling a strong odor of chemicals coming from Mr. Rapatz home. *Id.*

15. Both the statements from (1) two concerned law enforcement entities; and (2) one neighbor are hearsay statements as Vigil did not attest to personally observing these stated facts and neither did his investigation confirm either fact that there was criminal activity at the residence by Plaintiffs. What Vigil states that he smell was something that "smelt like urine". [See, Exhibit D, pg.6, ¶ 1].

16. Vigil stated in his Affidavit that he had a confidential informant (IT) visit the occupants of the home. Vigil, in describing the veracity of IT, merely states that "It [sic] worked with affiant in previous cases and has been a good and reliable source." [See, Exhibit D, pg.6, ¶ 2]. (Emphasis ours).

17. Vigil states that IT observed "a flask, heating elements, empty boxes of cold and allergy medication and acetone." [*Id.*]. All of the described items are legal for Plaintiffs to possess and are not evidence of a crime or criminal activity.

18. Vigil states that IT reported that Rapatz admitted to cooking methamphetamines in a different room of the house. [*Id.*].

19. Vigil and Pacheco on May 10, 2010 "observed" rather than smelled a distinct odor of "what appeared to be" Cat urine. [See, Exhibit D, pg.6, ¶ 3] (Emphasis ours).

20. Vigil states in his Affidavit that "… in order to ensure that a complete and thorough investigation, investigators may be required to examine the entire, above-mentioned premises, vehicle(s) and/or person(s) … It may be necessary for investigators to … damage entire portions of the premises and/or vehicle(s) …". [See, Exhibit D, pg.7, ¶ 3].

21. Vigil, on May 11, 2010, obtained a High Risk Warrant as it is defined under EPDD 55.1.16 (A). A High Risk Warrant is defined as "[w]hen there are facts to suggest that a place to be searched, or persons at the location present a special danger to the officers/detectives, the following steps **shall** be taken: (1) A Case Plan **shall** be prepared by the 'Incident Commander' ". [See, Exhibit F].

22. Vigil requested and Judge Raphelson issued a "No-Knock Warrant" based upon the statements and request made in the Affidavit which statements expressed that the Warrant was a High Risk Warrant. [See, Exhibit D and Exhibit E, respectively].

23. High Risk Warrants under EPDD 55.1.16 (A)(1) require that a Case Plan is prepared. [*Id.*].

24. A Case Plan under EPDD 69.1.19 (A) provides that a "Case Plan" is a written document that contains: (C)(1) an explanation of the nature of the operation and its goals; (C)(2) names and addresses etc. of identified targets; (C)(5) names of all personnel involved in the operations and their assignment; and (C)(6) numbers of all informants used in the operations. [See, Exhibit G, pg.3, ¶ C].

25. The Case Plan, pursuant to EPDD 69.1.19 (D), is required to "be approved through the chain of Command, Unit Commander, Criminal Investigations Section Commander, and Chief's Office." [See, Exhibit G, pg.3, ¶ D] (Emphasis ours).

26. Defendant Martinez (Chief of Police) and Defendant Lopez (Drug Unit Commander) are supervisors within the stated chain of command set forth in EPDD 69.1.19 (D).

27. Defendants Martinez and Lopez would, in approving the Case Plan, be required to read the search warrant and affidavit obtained by Vigil in this case.

28.     Defendants Martinez and Lopez were the on-scene commanders on May 11, 2010, when Plaintiffs' home was raided. [See, Exhibit C].

## ARGUMENT

**A.  Vigil Obtained, And Martinez and Lopez Approved As Well As Acquiesced, To The Execution Of An Invalid Search Warrant Which Is Overly-Broad On It's Face And A General Warrant Setting Forth No Probable Cause And Violating Plaintiffs' Fourth Amendment Rights**

"The Supreme Court has previously stated that the home is entitled to the greatest Fourth-Amendment protection." See, *Kyllo v. United States*, 533 U.S. 27, 31, 121 S. Ct. 2038, 2041-42, 150 L. Ed. 2d 94 (2001).  The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." "At the very core" of the Fourth Amendment "stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion." *Id.* Additionally, "[t]he Fourth Amendment provides that no Warrants shall issue, <u>but upon probable cause</u>, supported by Oath or affirmation, and <u>particularly describing the place to be searched</u>, and <u>the persons or things to be seized</u>. U.S. Const. amend. IV." *Id.* (emphasis ours). See, *Cassady v. Goering*, 567 F.3d 628, 634-35 (10th Cir. 2009).  We will address the particularity requirements under the Fourth Amendment first and then the probable cause requirements separately below.

The Supreme Court held that "[t]he warrant requirement has at least two distinct purposes:

> First, the magistrate's scrutiny is intended to <u>eliminate altogether</u> <u>searches not based on probable cause</u>. The premise here is that any intrusion in the way of search or seizure is an evil, so that no intrusion at all is justified without a careful prior determination of necessity. <u>The second, distinct objective is that those searches deemed necessary should be as limited as possible. Here, the specific evil is the 'general warrant' abhorred by the colonists, and the problem is not that of intrusion per se, but of a general, exploratory rummaging in a person's belongings. The warrant accomplishes this second objective by requiring a 'particular description' of the things to be seized.</u>"

See, *Coolidge v. New Hampshire,* 403 U.S. 443, 467, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971) (citations omitted) (emphasis ours). As the Court explained, "the fourth amendment requires that the government describe the items to be seized with as much specificity as the government's knowledge and circumstances allow, and warrants are conclusively invalidated by their substantial failure to specify as nearly as possible the distinguishing characteristics of the goods to be seized." See, *United States v. Leary,* 846 F.2d 592, 600 (10th Cir.1988) (internal quotation marks omitted)." *Id.* (emphasis ours). "The particularity requirement ensures that a search is confined in scope to particularly described evidence relating to a specific crime for which there is demonstrated probable cause." See, *Voss v. Bergsgaard*, 774 F.2d 402, 404 (10th Cir. 1985) (emphasis ours). As well, "[t]his requirement "'makes general searches ... impossible and prevents the seizure of one thing under a warrant describing another. As to what is to be taken, nothing is left to the discretion of the officer executing the warrant.'" See, *Voss v. Bergsgaard*, 774 F.2d 402, 404 (10th Cir. 1985) (emphasis ours).

In *Cassady* the Court held that the "[t]he warrant here is ungrammatical and difficult to read in many respects. It authorized the search of the entire farm, including Mr. Cassady's house, and the seizure of "[a]ny & all narcotics," "[a]ny and all illegal contraband" and various specific items mostly related to a narcotics operation. … In addition, however, and most damaging to Mr. Goering's argument, the warrant expressly permitted the search and seizure of "all other evidence of criminal activity" as well as personal property that was stolen, embezzled, or otherwise illegal; or was designed, intended, or had been used to commit a criminal offense; or would be material evidence in a criminal prosecution in Colorado or any other state; or the seizure of which was expressly required, authorized, or permitted by any Colorado statute. *Id.* Hence, the warrant did not confine the scope of the search to any particular crime. The officers only had probable cause

to search for evidence related to marijuana cultivation, yet the warrant authorized the seizure of all possible evidence of any crime in any jurisdiction. Consequently, "[t]he warrant[ ] allowed precisely the kind of rummaging through a person's belongings, in search of evidence of even previously unsuspected crimes or of no crime at all, that the fourth amendment proscribes." *Voss*, 774 F.2d at 405." *Id.* (Emphasis ours).

The search warrant in this case which was drafted by Vigil, approved and acquiesced to by Martinez and Lopez is identical to the "general warrant" which the Tenth Circuit in *Coolidge* found as being "abhorred by the colonists". *Id.* The search warrant itself, Exhibit E, contains no details and merely incorporates Vigil's "Affidavit". The Affidavit, Exhibit D, on its' face provides no "specificity" or distinguishing characteristics of the goods to be seized. The Affidavit does not confine the scope of the search to any area or to any particular crime. However, as will be discussed in detail below, the Search Warrant's "No Knock" approval by Judge Raphelson violated the EPDD and is one of the clear indicators of VIGIL's gross lack of training and knowledge of the EPDD.

In *Voss v. Bergsgaard*, 774 F.2d 402, 404 (10th Cir. 1985) which cited *Cassady*, the Court found that "[t]he government affidavit supporting the warrants … alleged a scheme of tax fraud, and the district court found that probable cause existed." *Id.* However, as found by the Court, "[t]he bulk of the warrant was not restricted to evidence related to tax fraud …". *Id.* at 404-5. (emphasis ours). The Court held that the warrant, "authorized government agents to rummage through all of the NCBA's customer files, bank records, employee records, precious metal records, marketing and promotional literature, and more, seeking any information pertaining to any federal crime. Even to describe the warrant as limited to evidence relating to federal crimes is an interpretation generous to the government." *Id.* (emphasis ours). In *Voss* the Court made

note of the fact that the warrant, in its' concluding sentence "… refers to the general conspiracy statute, but is not couched in terms that clearly restrict seizure to evidence relevant to the violation of the statute. The sentence simply reads: "All of which are evidence of violations of Title 18, United States Code, Section 371." *Id.* at 405. Vigil's Affidavit suffers from the identical defects and flaws.

The Warrant and Affidavit in the instant case was copied by Vigil from a New Mexico State Police Affidavit. This fact is evidenced by Vigil, an Espanola Police Officer, having signed the Affidavit as an "Officer, NM State Police". Not being clever enough to change the procuring agency's name below the place where he signed the form, Vigil also failed to change the general descriptions which are contained in the form. The Affidavit fails to specify the goods to be seized, limit the areas in which the officers are authorized to search and/or connect the items to any crime or criminal activity. On this basis alone the Warrant and Affidavit are invalid and violate Plaintiffs' Fourth Amendment rights.

1. **The Affidavit Lists Categories Of Items Being Concealed And List Every Possible Thing Related To Each Category Without Any Connection Or Limitation To A Suspected Crime**

The Affidavit describes what is being "concealed" and lists virtually everything related to each identified category, i.e. Firearms, Prescription Drugs, etc… . The categories fail to specify the items to be seized, where in the premises the items are suspected to be located and how any of the items are related to any particular crime or criminal activity. Where the Affidavit provides the "grounds for issuance of a Search Warrant" it merely list approximately three pages of Vigil's position, background, training and experience. [*Id.* pgs.3-4, ¶¶s # 1-5(k)].

As detailed in this brief above, the Affidavit page 6, paragraphs 12(a) through 12(l), makes an exhaustive list of things with no regard or connection to any particular area of the

premises or to any crime or criminal activity. The Tenth Circuit in *Voss*, supra, found that when a warrant allows precisely the kind of rummaging through a person's belongings, in search of evidence of unsuspected crimes or of no crime at all, then it violates the proscribes of the Fourth Amendment. *Id.* 774 F.2d at 405.

As noted above, "the particularity requirement prevents general searches and strictly limits the discretion of the officer executing the warrant. The particularity requirement ensures that <u>a search is confined in scope to particularly described evidence relating to a specific crime</u> for which there is demonstrated probable cause. See, *Voss*, supra, 774 F.2d 402, 404 (10th Cir. 1985)(emphasis ours). The Tenth Circuit in *Voss* found that the warrant violated the plaintiffs Fourth Amendment rights because "[t]he warrant [ ] allowed precisely the kind of rummaging through a person belongings, in search of evidence even previously unsuspected crimes or of no crime at all, that the Fourth Amendment proscribes." *Id.* at 405. Also, the Tenth Circuit has applied a blanket suppression where officers conducted a general search for evidence of crimes not specifically listed in the warrant. See, *Cassidy v. Goering*, 567 F.3d 628, 643 (10th Cir. 2009). The Warrant in this case is a general warrant that violated Plaintiffs Fourth Amendment rights.

> **2. Hearsay Statements From "Two Concerned Law Enforcement Entities" And A "Confidential Informant" Are Insufficient, Without Corroboration, Veracity, Or A Basis Of Knowledge To Establish Probable Cause For The Issuance Of The Search Warrant**

The Affidavit[3] lists several hearsay statements from three undisclosed sources, one of which was a confidential informant. The first hearsay statement is attributed to "two concerned law enforcement entities" who allegedly stated that "Rapatz sells drugs from his residence, and

---

[3] Under the New Mexico Constitution, Article II, § 10, "no warrant to search any place" may issue "without a *written* showing of probable cause. (emphasis added). The New Mexico Supreme Court has held that this limits the determination of probable cause to a "review" only of the affidavit. *State v. Haidle*, 285 P.3d 668, 673 (2012).

_**possibly**_ cooking Methamphetamines." [See, Exhibit D, pg.5, ¶ 6].  There is no other information in the Affidavit which is attributable to the sources and the Affidavit fails provide the veracity or basis of knowledge of the informants.  Second, the Affidavit does not supplement the hearsay statements with any additional facts from Vigil. The Affidavit, while describing several activities, none of the activities allegedly observed constitute a crime or show any criminal activity but instead merely contain Vigil's various hunches.

The New Mexico Supreme Court held, under Rule 5-211 (E), N.M.R.A. (Search Warrants) that "… when a showing of probable cause depends in whole or in part on hearsay information, the affidavit must show 'a substantial basis for believing the source of the hearsay to be credible and for believing that there is a factual basis for the information furnished.' As we explicitly recognized in _Cordova_, the components of this two-pronged test, often referred to as the "veracity" (or "credibility") and "basis of knowledge" (or "factual basis") requirements for evaluating information from hearsay sources, "effectuate the principles behind Article II, Section 10, of the New Mexico Constitution." See, _State v. Haidle_, 2012-NMSC-033, 285 P.3d 668, 673 (2012) (emphasis ours); see also _State v. Perea_, 85 N.M. 505, 509, 513 P.2d 1287, 1291 (Ct.App.1973) ("applying the veracity and basis of knowledge test to double hearsay").

In _Haidle_, supra, the Court referred to people who speak directly to the Defendant, i.e. the two concerned citizens, as "level one sources". _Id._ 285 P.3d at 673.  The level one sources in _Haidle_ allegedly heard the Defendant, like the confidential informant in the instant case, admit to [committing a crime or engaging in criminal activity]. _Id._ Regarding level one confidential informants, the Court held that the mere allegation that a source is a "confidential source" or a "concerned citizen" is inadequate. _Id._, see also, _State v. Baca_, 97 N.M. 379, 381, 640 P.2d 485, 487 (1982) ("noting that even where hearsay information is from a confidential informant, there

must be 'sufficient underlying circumstances in the affidavit from which the judge could conclude that the informant is credible' ") (emphasis ours); and *State v. Cordova*, 1989-NMSC-083, 109 N.M. 211, 216, 784 P.2d 30, 36 (1989) ("concluding that police corroboration in past cases of information supplied by a "confidential informant" was a marginally sufficient showing of credibility").

In *State v. Cordova*, 1989-NMSC-083, 109 N.M. 211, 217, 784 P.2d 30, 36 (1989), the Court held that the Affidavit failed to state adequately the basis of the informant's knowledge and the deficiency was not cured by independent corroboration. *Id.* The Affidavit failed because it did not provide the issuing court with a substantial basis for believing that the information provided was reliable. *Id.* By "stating that his informant had provided reliable information in the past, did not say "when the informant had provided such information, how frequently, or whether the information provided related to a matter under criminal investigation * * *. [F]or all we know, the statement could refer to nothing more than the fact the informant had correctly provided * * * the time of day * * *." *Id.* (Emphasis ours). The Affidavit in this case provides even less information than that ruled insufficient in *Cordova.*

Turning to the "two concerned law enforcement entities" hearsay statements, these statements alone, without any supplementation in the Affidavit, also cannot support a finding of probable cause justifying the issuance of the search warrant by Judge Raphelson. The U.S. Supreme Court, in *Illinois v. Gates,* 103 S. Ct. 2317, 2326 (1983) set forth a couple of examples in which the statements in the Affidavit were held insufficient to establish probable cause. In *Nathanson v. United States*, 54 S.Ct. 11 (1933) "[a] sworn statement of an affiant that 'he has cause to suspect and does believe that' liquor illegally brought into the United States is located on certain premises will not do." "An affidavit must provide the magistrate with a substantial

basis for determining the existence of probable cause, and the wholly conclusory statement at issue in *Nathanson* failed to meet this requirement." See, *Gates*, 103 S. Ct. at 2332 (emphasis ours). The Court further found that the statement gave the magistrate virtually no basis at all for him to make a judgment regarding probable cause. *Id.* "Sufficient information must be presented to the magistrate to allow that official to determine probable cause; his action cannot be a mere ratification of the bare conclusions of others." *Id.*

The Affidavit by Vigil, in the instant case, attributes to the confidential informant several hearsay statements that he "observed items not limited to a flask, heating elements, empty boxes of cold and allergy medication, and acetone. [See, Exhibit D, ¶ 2]. In addition, the informant allegedly stated that "during conversations with individuals in the home to include Tony Rapatz, they admitted to cooking methamphetamines in a different room of the house." *Id.* The Affidavit states that the informant "observed firearms in the home to include an assault riffle [sic] but was unsure what type of riffle [sic]." *Id.* Nothing in the Affidavit supplements or corroborates the hearsay statements of the confidential informant.

For purposes of establishing the informant's veracity (or credibility) Vigil recites that "It [sic] has worked with affiant in previous cases and has been a good and reliable source." *Id.* The Affidavit does not say when the informant had provided reliable information, how frequently, or whether the information provided related to a matter under criminal investigation. Vigil's veracity statement in his Affidavit regarding the confidential informant, as we have already established, is insufficient and fails to provide the magistrate with a substantial basis for determining the existence of probable cause. See, *Gates,* supra, 103 S. Ct. a 2326.

The Supreme Court in applying a "totality-of-the-circumstances" analysis has consistently recognized the value of corroboration of details of an informant's tip by independent

police work. See, *Gates*, 103 S. Ct. at 2334 (emphasis ours). An informant's hearsay statement must be corroborated by independent police investigation or other matters within the officer's knowledge. *Id. Gates,* supra, cited *Draper v. United States*, 79 S. Ct. 329 (1959) which found that "… an informant named Hereford reported that Draper would arrive in Denver on a train from Chicago on one of two days, and that he would be carrying a quantity of heroin. <u>The informant also supplied a fairly detailed physical description of Draper, and predicted that he would be wearing a light colored raincoat, brown slacks and black shoes, and would be walking "real fast</u>." *Id*. 79 S. Ct. at 331. Hereford gave no indication of the basis for his information." See, *Gates*, 103 S. Ct. at 2334. As noted by the Court in *Gates*, the police officers in *Draper* "had <u>personally verified every facet of the information given him by Hereford</u> except whether petitioner had accomplished his mission and had three ounces of heroin on his person or in his bag. *Id.* (emphasis ours).

In applying this test to the instant case, the two concerned law enforcement entities, as set forth in the Affidavit, provided <u>no detailed information</u> and the statements attributed to them were merely conclusory statements that "Rapatz sells drugs from his residence, and ***possibly*** cooking Methamphetamines." There is no veracity or basis of knowledge associated with the hearsay statements. Additionally, there is no supplementation of any of the hearsay facts demonstrated through any police investigative work. In fact, even though a confidential informant was allegedly used there was no purchase of drugs, no observation of drugs, no confirmation by the confidential informant that he knows what the specific drugs the police are looking for look like. What the confidential informant actually observed were (1) not drugs; (2) not illegal items; (3) did not constitute a crime; and (4) was not criminal activity.

The only thing the confidential informant provided was the additional conclusory hearsay statements that Plaintiff Rapatz made an admission. However, the mere allegation that a source is a "confidential source" or a "concerned citizen" is inadequate. These facts cannot support a finding of probable cause alone. There must be sufficient information presented to the magistrate to allow that official to determine probable cause; <u>his action cannot be a mere ratification of the bare conclusions of others</u>." See, *State v. Haidle*, 2012-NMSC-033, 285 P.3d 668, 673 (2012).

**B. Martinez And LOPEZ Personally Participated In And Approved The Case Plan Which Includes VIGIL's Invalid General Warrant And Which Violated Other EPD Directives Regarding A No Knock Execution Of The Warrant**

It was noted by the Supreme Court that, "[t]ypically, <u>only one or a few officers plan and lead a search</u>, but more—perhaps many more—help execute it. <u>The officers who lead the team that executes a warrant are responsible for ensuring that they have lawful authority for their actions</u>. <u>A key aspect of this responsibility is making sure that they have a proper warrant that in fact authorizes the search and seizure they are about to conduct. The leaders of the expedition may not simply assume that the warrant authorizes the search and seizure. Rather, they must actually read the warrant and satisfy themselves that they understand its scope and limitations, and that it is not defective in some obvious way</u>. See *United States v. Leon*, 468 U.S. 897, 922–23, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984) (search pursuant to a warrant is invalid if no reasonable officer could have believed the warrant was valid). See, *Ramirez v. Butte-Silver Bow Cnty*., 298 F.3d 1022, 1027 (9th Cir. 2002) aff'd sub nom. *Groh v. Ramirez*, 540 U.S. 551, 124 S. Ct. 1284, 157 L. Ed. 2d 1068 (2004) (emphasis ours).

The Court further held that, "[w]hen one officer with authority directs his subordinates to interfere with the civil rights of another, that officer is an active participant in the interference and thus can be held liable for the subordinates' actions. See, *Smith v. Heath*, 691 F.2d 220 (6th

Cir. 1982). This view is mandated by the language of the statute. 42 U.S.C. s 1983: "[a]ny official who 'causes' a citizen to be deprived of [his or] her constitutional rights can be held liable. See, *Dodds v. Richardson*, 614 F.3d 1185, 1195 (10th Cir. 2010). It does not require "direct participation". *Id.*

As evidenced in Exhibit C and Exhibits G and H, Martinez and Lopez were both the on-scene-supervisors during the execution of the search warrant and approved the Case Plan related to the High Risk Warrant. It was at Martinez and Lopez direction that Vigil sought and received approval of the "Case Plan" which carried out the execution of the search warrant. EPD Directives, 55.1.16 – High Risk Warrants [Exhibit H] provides that "[w]hen there are facts to suggest that a place to be searched, or persons at the location present a special danger to the officers/detectives, the following steps **shall** be taken: (1) A Case Plan **shall** be prepared by the 'Incident Commander' ". *Id.* A Case Plan is described in EPD Directives 69.1.19 (A) and provides: "… It is the policy of the Espanola Police Department to prepare and obtain approval of a case plan." [Exhibit G]. Subsection C requires that the Case Plan included: (C)(1) an explanation of the nature of the operation and its goals; (C)(2) names and addresses etc. of identified targets; (C)(5) names of all personnel involved in the operations and their assignment; and (C)(6) numbers of all informants used in the operations. [*Id.*]. Subsection D requires the Case Plan be **approved through the chain of Command, Unit Commander, Criminal Investigations Section Commander, and Chief's Office." [***Id.***]. The superiors designated as giving approval include both Martinez and Lopez.

Vigil testified that Lopez was his Supervisor from 2008 through 2012 which covers the period of this invalid search warrant. [See, Exhibit F, Vigil Depo., pgs.189-90, lns.19-1]. Vigil reported to Lopez and "nobody elese" on "drug stuff". [*Id.* pg.190, lns.2-16]. Vigil further

testified that he would work with Lopez and report on "buys, amount of buys, SEARCH WARRANTS." [*Id.* pgs.190-1, lns.21-3]. Vigil also testified that he would "[a] lot of times I went to him and advised him we are ready to get a search warrant, this is what we done, what do you think."[*Id.* pg.191, lns. 8-12]. It was LOPEZ's job to review search warrants that VIGIL obtained after he obtained them. [*Id.* pg.191, lns.13-15].

Lopez and Martinez's involvement in reviewing, directing and being on-scene supervisors constitutes participation which makes them liable under § 1983. As held by the Tenth Circuit Court of Appeals in *Dodds v. Richardson*, 614 F.3d 1185, 1195 (10th Cir. 2010), "[w]hile *respondeat superior* imposes liability for public policy reasons upon masters though they are not at fault in any way, <u>direct liability only imposes liability where the plaintiff has shown the supervisor himself "breached a duty to plaintiff which was the proximate cause of the injury.</u>" *Id.* (Emphasis ours). We consequently concluded that " '[i]ndividual liability under § 1983 must be based on personal involvement in the alleged constitutional violation' " but <u>"[p]ersonal involvement is not limited solely to situations where a defendant violates a plaintiff's rights by physically placing hands on him.</u>" *Fogarty,* 523 F.3d at 1162 (quoting *Foote v. Spiegel,* 118 F.3d 1416, 1423 (10th Cir.1997)). <u>Personal involvement does not require direct participation because § 1983 states " '[a]ny official who "causes" a citizen to be deprived of her constitutional rights can also be held liable.' "</u> *Buck v. City of Albuquerque,* 549 F.3d 1269, 1279 (10th Cir.2008) (quoting *Snell v. Tunnell,* 920 F.2d 673, 700 (10th Cir.1990)). LOPEZ involvement in the issuance an execution of an invalid search warrant imposes supervisory individual liability upon him under § 1983.

## CONCLUSION

For all the foregoing reasons, the Court should grant Plaintiffs' Motion for Partial Summary Judgment against the Defendants, Martinez, Lopez and Vigil and grant such other and further relief that this Court deems just and proper.

**RESPECTFULLY SUBMITTED:**

By: _____
Nathaniel V. Thompkins
103 St. Francis Drive, Unit A
Santa Fe, NM 87501
505-988-9750
Fax: (866) 657-8780
Email: nate@newmexicofirm.com
*Attorney for Plaintiffs*

I hereby certify that I filed the
foregoing electronically through
the CM/ECF system, which caused
the following parties or counsel to be served
by electronic means, as more fully reflected
on the Notice of Electronic Filing this 20th
day of March, 2014.

Robert L. Cole, Esquire: rlc@rcolelaw.com
*Attorneys for the City of Espanola, et al.*

_____
Nathaniel V. Thompkins