b. Date of receipt of the search warrant;

c. Date of service;

d. Location of service;

e. Name of person on whom the warrant was served;

f. Name of the Judge and court who issued the warrant;

g. Name of those persons present when the warrant was served;

h. Items seized in the search; and

i. Any arrests and/or pending charges.

**55.1.16   HIGH RISK WARRANTS**

A. When there are facts to suggest that a place to be searched, or persons at the location present a special danger to the officers/detectives, the following steps shall be taken:

1. A Case Plan shall be prepared by the Incident Commander.

2. Plainclothes commanders/supervisors shall request assistance from uniformed officers, with approval from the on-duty commander/supervisor.

3. If it is determined that uniformed assistance is not sufficient to lessen the risk, the commander/supervisor should request assistance from a S.W.A.T. Team Commander with NMSP.

4. All persons who respond to the scene shall wear Department issued ballistic resistant body armor.

5. The Lieutenant will be notified, and shall advise the Office of the Chief of Police, prior to the search taking place.

B. All search warrants that are served with the assistance of a S.W.A.T. Team will be in accordance with their standard operating procedures.

C. Magistrates and Judges may **NOT** pre-approve a no-knock entry. Such entry is the decision of officers executing the search warrant. The decision must be based on facts known to the officers relating to the danger posed by knocking and announcing their presence and intent. The fact that narcotics are involved and/or that the person(s) owns firearms is not sufficient. There must be a reasonable likelihood, based on articulable facts, that the weapons will be used against the officers.

**55.1.17   CONCLUSION**

A. The expectations listed above are those most often encountered by officers in this jurisdiction. These are by no means exclusive and there have been omitted situations such as customs searches, border searches, searches in regard to business licenses, OSHA searches and drug testing of employees. As stated above, if a search or situation does not fall clearly into one of these exceptions to the search warrant requirement, then a search warrant must be obtained before the search is begun.

B. While affidavits for search warrants are generally not difficult to write nor are search warrants difficult to serve, they do however require knowledge of the forms on which they are written as well as a familiarity with the Espanola Police Departments procedures for serving search warrants.

1. If an officer encounters a situation where the officer feels a search warrant is needed or is not certain if a search warrant is needed, the officer should contact his supervisor for advise.

2. If the supervisor determines that a search warrant is needed, the supervisor shall direct the manner in which the search warrant and supporting affidavit are applied.

C. An Assistant District Attorney must approve all affidavits for search warrants before they are presented to the judge or magistrate to be issued.

1. If the District Attorney's Office is closed, the on-duty Assistant District Attorney should be contacted by telephone for approval of the affidavit and search warrant.

D. If an officer conducts a search without a search warrant, the officer shall state in his/her report the exception(s) to the search warrant requirement that the officer relied upon in searching the person or place and seizing the item or items of evidence or contraband.

Exhibit H